IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN A. WALTERS, :

Plaintiff, :

v. : Civil Action No. GLR-12-2310

DANN MARINE TOWING, LC., et al., :

Defendants. :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Dann Marine Towing, LC. ("Dann Marine") and Constellation Power Source, Inc.'s ("Constellation") (collectively the "Defendants") Motions to Dismiss Counts II and V of Plaintiff John A. Walters' ("Walters") Amended Complaint[1] for failure to state claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 16-17). This is a personal injury case under admiralty and maritime law in which Walters alleges that Defendants are liable for injuries he sustained within the course of his employment as an able-bodied seaman in a coal transport operation.

[1] Walters' Amended Complaint asserts five counts: Count I—Jones Act negligence against Dann Marine; Count II—unseaworthiness against Dann Marine; Count III—maintenance and cure against Dann Marine; Count IV—negligence against Constellation; and Count V—unseaworthiness against Constellation. The Motions to Dismiss are solely as to Counts II and V, the unseaworthiness claims against the respective Defendants.

The issues before the Court are (1) whether Walters fails to state a claim for unseaworthiness against his employer, Dann Marine, where he fails to allege ownership and control by Dann Marine of the barge upon which he suffered his injury; and (2) whether Walters fails to state a claim for unseaworthiness against Constellation where he alleges facts to permit an inference that he was a seaman in relation to his employer's tug, but not directly as to the barge, owned by Constellation, upon which he suffered his injury. The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011).

For the reasons that follow, Defendants' Motions will be granted. First, the Court will grant Dann Marine's Motion to Dismiss Count II because Dann Marine was not the actual or constructive owner of the Barge and Dann Marine did not, therefore, owe Walters a duty of seaworthiness as to the Barge. Second, the Court will grant Constellation's Motion to Dismiss Count V because Walters was not a seaman as to Constellation's Barge and Constellation did not, therefore, owe Walters a duty of seaworthiness.

## I. BACKGROUND[2]

This action arises from a slip-and-fall injury suffered by Walters on the Barge BGE 02 ("BGE 02" or the "Barge") on July 12, 2010. Walters alleges that Constellation owned and/or operated the Barge, which it used to transport coal from various ports, including Norfolk and Newport News, Virginia, to Baltimore, Maryland. Dann Marine owned the Coral Coast (the "Tug"), a tugboat used to tow coal barges, including BGE 02. Dann Marine also employed Walters as an able-bodied seaman.

On July 12, 2012, Walters was aboard the Tug as it towed a barge loaded with coal. The coal was to be discharged at Constellation's Brandon Shores facility in Baltimore, Maryland. The facility could only accommodate the discharge of one barge at a time, so tugs would often release one barge for discharge at the facility and, during that discharge, engage an empty barge for the return trip to Virginia.

Upon the Tug's arrival on the day in question, the Barge was in the final stages of discharge, and the Tug stood by ready to engage it. Per his duties as an able-bodied seaman, Walters boarded the Barge's deck to assist with the lines between the Tug and the Barge. While aboard the Barge, Walters slipped on pellets of coal that had been spilled on the deck during the

[2] Unless otherwise noted, the following facts are taken from the Amended Complaint and viewed in the light most favorable to Walters.

prior discharge. He lost his balance and suffered severe injuries to his neck.

In his Amended Complaint,[3] Walters alleges that Constellation had a duty to sweep and clean the deck as a matter of practice and/or contract, which it failed to execute. Such failure resulted in an unseaworthy condition, as the presence of coal on the deck of the Barge created the potential for harm to Walters and similarly situated crewmembers. As a result of slipping on the deck of the Barge, Walters suffered two herniated discs, an injury that has since required surgery and substantial medical attention.[4]

## II. DISCUSSION

### A. Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007) (internal citations omitted); see Fed.R.Civ.P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."

[3] Walters filed the Amended Complaint because the original Complaint incorrectly named Exelon instead of Constellation.

[4] Walters also alleges numerous other damages—extreme bodily pain and mental anguish, lost time from his usual work, continued medical expenses, disability, inability to pursue his vocation and other life pleasures—none of which are dispositive in the matter currently before this Court.

Ashcroft v. Iqbal, 550 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." Iqbal, 550 U.S. at 678 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." Id.; Twombly, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 550 U.S. at 678; Twombly, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. Twombly, 550 U.S. at 556 n.3.

**B. Analysis**

**1. Count II – Unseaworthiness Against Dann Marine**

The Court will grant Dann Marine's Motion to Dismiss Count II because Dann Marine was not the actual or constructive owner of the Barge and therefore owed Walters no duty of seaworthiness as to the Barge.

The duty of seaworthiness is "an absolute and nondelegable one which the owner of a vessel owes to the members of the crew who man her." United N.Y. & N.J. Sandy Hook Pilots Ass'n. v. Halecki, 358 U.S. 613, 616 (1959) (citation omitted). While the ship owner is generally the proper defendant in an unseaworthiness claim, a non-owner party may assume a duty of seaworthiness by becoming a demise charterer of the vessel. See Guzman v. Pichirilo, 369 U.S. 698, 700 (1962) ("[A] demise may bring about a change in the respective legal obligations of the owner and demisee . . . ."). To create a demise charter, however, "the owner of the vessel must completely and exclusively relinquish 'possession, command, and navigation' thereof to the demisee." Id. at 699 (citing United States v. Shea, 152 U.S. 178, 186 (1894)). Under the fleet doctrine, an individual who performs regular work on a fleet of vessels may be considered a crewmember as to select vessels within the fleet. See Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995) ("[A] seaman must have a connection to a vessel in navigation

*(or to an identifiable group of such vessels)* that is substantial in terms of both its duration and its nature.”) (emphasis added).

Walters’ Amended Complaint fails to allege that Dann Marine was the owner of the vessel upon which he was injured. To the contrary, Walters explicitly alleges that Constellation was the owner and/or operator of the vessel. (See Pl.’s Am. Compl. ¶ 7, ECF No. 8). The allegation that Constellation was responsible for sweeping the deck contradicts the existence of a demise charter relationship between Dann Marine and the Barge as well, as such responsibility suggests less than a complete and exclusive relinquishment of “possession, command, and navigation” of the Barge. Shea, 152 U.S. at 186. Thus, assuming Walters’ allegations to be true, he nevertheless fails to state a claim for relief against Dann Marine for unseaworthiness.

Walters’ arguments in opposition to Dann Marine’s Motion to Dismiss are not persuasive. Walters contends that he should be entitled to all three remedies available to a seaman: (1) Jones Act negligence,[5] (2) unseaworthiness, and (3) maintenance and cure. Such an entitlement, however, does not change the fact

[5] The Jones Act provides a cause of action in negligence for seamen injured during employment. Chandris, Inc. v. Latsis, 515 U.S. 347, 354 (1995); 46 U.S.C. § 30104 (2012). Walters’ negligence counts are not currently before the Court and therefore have not been briefed by the parties.

that Dann Marine did not own the Barge, which renders an unseaworthiness claim against it tenuous at best.

Walters also seeks to invoke the fleet doctrine in order to establish crewmember status as to the numerous vessels involved in the coal transport operation between Newport News or Norfolk and Baltimore. Even if this Court generously gives Walters the benefit of the fleet doctrine, such benefit simply establishes Walters' status as a seaman on the Barge. The assumed fact that Walters was constructively a crewmember on the Barge, however, does not establish that his employer Dann Marine was an owner, or even a demise charterer of the Barge. Thus, the allegations, even taken in the light most favorable to Walters, still fail to satisfy the key ownership element of the claim against Dann Marine.

Dann Marine's alleged failure to demand the sweeping of the Barge's deck similarly does not impose upon Dann Marine a duty of seaworthiness. Whether Dann Marine had knowledge of the hazardous condition on the Barge may be relevant in determining whether Dann Marine was negligent as an employer; however, it does not have any bearing on the existence of a duty of seaworthiness.[6]

[6] Unseaworthiness and negligence are distinct and independent causes of action. Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-25 (5th ed. 2012).

Accordingly, because Walters fails to allege ownership or constructive ownership by Dann Marine in his claim for unseaworthiness, the Court will grant Dann Marine's Motion to Dismiss Count II.

**2. Count V – Unseaworthiness Against Constellation**

The Court also will grant Constellation's Motion to Dismiss Count V because Walters was not a seaman as to Constellation's Barge and therefore Constellation did not owe him a duty of seaworthiness.

As previously stated, the duty of seaworthiness is "an absolute and nondelegable one which the owner of a vessel owes to the members of the crew who man her." Halecki, 358 U.S. at 613. Courts have expanded the doctrine to cover non-crewmembers who are injured as a result of hazardous conditions on a vessel. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 95 (1946) (holding that the doctrine of seaworthiness is not limited to seamen but extends to those who render services on a vessel at the owner's consent or arrangement, such as longshoremen). In 1972, Congress amended the Longshoremen and Harbor Workers Compensation Act (LHWCA) to preclude seaworthiness actions by longshoremen.[7] See U.S. Lines, Inc. v. United States, 593 F.2d

[7] LHWCA is codified as 33 U.S.C. §§ 901–950 (2012). Section 905(b) provides in relevant part that "[t]he liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the

570, 572 (4th Cir. 1979) (holding that Congress eliminated the doctrine of unseaworthiness as it applied to longshoremen). While it is clear that longshoremen covered by the LHWCA can no longer assert claims of unseaworthiness against ship owners, it is less clear whether seamen, who are not covered by the LHWCA, are prohibited from asserting such claims.

The United States Court of Appeals for the Fourth Circuit has held that "Congress specifically overruled Sieracki with the 1972 amendments to the LHWCA." Harwood v. Partredereit AF 15.5.81, 944 F.2d 1187, 1190 n.1 (4th Cir. 1991). In Harwood, the plaintiff was a pilot who was injured while attempting to board a ship. Id. at 1189. The Court held that the plaintiff was covered by the LHWCA and therefore not entitled to the warranty of seaworthiness. Id. at 1991–92. The question remained, however, whether unseaworthiness was available as a cause of action to those not covered by the LHWCA.

At least one court within this Circuit has determined that the 1972 LHWCA amendments preclude the seaworthiness cause of

---

injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C. § 905(b). Courts have interpreted this statutory language as precluding seaworthiness claims as to individuals covered under the LHWCA. See, e.g., Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 97 (1994). At least to some extent, § 905(b) abrogates Seas Shipping Co. v. Sieracki, 328 U.S. 85, 95 (1946) (holding that the doctrine of seaworthiness is not limited to seamen but extends to those who render services on a vessel at the owner's consent or arrangement, such as longshoremen).

action for not only longshoremen, but also for seamen who are not employed by the owner of the ship upon which they are injured. See Babbitt v. Hanover Towing, Inc., 7 F.Supp.2d 650, 653 (E.D.N.C. 1998) ("Fourth Circuit law permits a seaman no recovery under the doctrine of seaworthiness in the absence of an employment relationship between the parties."). The plaintiff in Babbitt was a crew member of a tug who slipped while trying to board a skiff that the defendant provided for service of its oil barge. Id. at 651. The Babbitt court interpreted Harwood as holding that the 1972 amendments had "abolished" the Sieracki form of action altogether, making unseaworthiness unavailable in the absence of an employment relationship between the parties. Id. at 653.

The United States Court of Appeals for the Fifth Circuit has not completely extinguished the Sieracki doctrine, but notably has denied its application to non-employee seamen. See Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312, 314 (5th. Cir. 1990) (finding "no need for [the plaintiff] to join the pocket of Sieracki seamen" based on the multiplicity of remedies available to him); see also Bridges v. Penrod Drilling Co., 740 F.2d 361, 364 (5th Cir. 1984) (reasoning that "[the plaintiff] was possessed of the full range of traditional seaman's rights and remedies" and thus "it was not necessary that [he] be

characterized as a remnant Sieracki seaman of the [barge upon which he was injured as a non-employee]”).

While the analyses in Babbitt and Smith have been subject to criticism,[8] and neither is binding on this Court, Walters cites neither Supreme Court nor Fourth Circuit authority to support his right of action under Sieracki following the 1972 amendments to the LHWCA. In the absence of such authority, the Court finds Babbitt and Smith persuasive. Applying the principle in Babbitt, Walters was not employed by Constellation, and therefore Constellation did not owe him a duty of seaworthiness. Moreover, as in Smith and Bridges, Walters has other potential remedies at his disposal, including the other counts in his Amended Complaint.[9] Thus, there is no compelling reason to treat him as a seaman on the Barge under Sieracki.

Accordingly, the Court finds that Walters fails to allege seaman status as to the Barge, and therefore, Constellation did not owe him a duty of seaworthiness. For this reason, the Court will grant Constellation’s Motion to Dismiss Count V.

## III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, GRANT Dann Marine’s Motion to Dismiss (ECF No. 16) as to

---

[8] See Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-27, n.22 (5th ed. 2012) (“[Bridges and Smith] erred in their assumption that seamen cannot sue nonemployer shipowners for unseaworthiness.”)

[9] See supra note 1, at 1.

Count II, and Constellation's Motion to Dismiss (ECF No. 17) as to Count V. Accordingly, Walters' surviving claims include negligence against Dann Marine (Count I), maintenance and cure against Dann Marine (Count III), and negligence against Constellation (Count (IV).

Entered this 10th day of April, 2013

/s/

_______________________________

George L. Russell, III
United States District Judge